## THE LANCASTER.

### THE McGUIRL BROS.
#### No. 13517.

District Court, E. D. New York.
Nov. 24, 1933.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and P. Fearson Shortridge, both of New York City, of counsel), for libelant.

Alexander, Ash & Jones, of New York City, for claimant.

BYERS, District Judge.

On the morning of March 31, 1927, at about 8:00 o'clock, a collision occurred near the 21st Street pier (southerly side) of Gowanus Canal between the libelant's tug Lancaster and an oil barge in tow of the claimant's tug McGuirl Bros., under circumstances which present only a contested question of fact.

The Lancaster had taken the lighter McAllister No. 74 in tow on her starboard side at Crane's shipyard, destined for the 21st Street pier; on arrival, these vessels proceeded into the slip in search of a pile-driver supposed to be there, and apparently alongside of which the lighter was to be landed.

None was found and, according to the testimony for the libelant, the captain of the Lancaster moored the lighter alongside of two steamers which were lying on the north side of the 21st Street pier, almost flush with the pier end. These vessels were the Spray, which was alongside the pier, and the Underwriter, outside of her, both lying bow out, clearing the pier. The tug master says that he brought the McAllister No. 74 alongside the Underwriter, and put out a stern line to the latter, and worked up ahead and then put up a bow line.

The weather was fair; there was no wind, and the tide was slack; about that time, the McGuirl Bros. was observed headed down Gowanus Canal in the vicinity of 18th Street. She had in tow the oil barge Montezuma on two short hawsers; that is, there were about three fathoms of hawser, measured from the towing bitt ten feet forward of the stern of the McGuirl Bros., made fast to each bow corner of the Montezuma.

The McGuirl Bros. blew a one-whistle signal to the Lancaster when about off 19th Street, which was not answered; a few seconds later, the one-whistle signal was repeated, and was answered by the Lancaster, also with one whistle.

It is found that the navigators of both tugs understood this acceptance of the one-blast signal to mean that the Lancaster would not interfere with the McGuirl Bros., namely, that the Lancaster did not intend to back out into the Canal so as to interfere with the outbound tow.

The foregoing facts (except that the McAllister was moored to the Underwriter) are not in dispute; nor is it contested that, within a very short space of time after this exchange of signals, the Montezuma collided with the port side forward of the Lancaster, inflicting the damage complained of.

The explanation offered for the McGuirl Bros. is that the one-whistle signal first blown was intended to inquire if the Lancaster was going to continue in the backward motion which the McGuirl Bros. witnesses say they observed when they had a view into the slip north of 21st Street, and that the repetition of the inquiry was due to the continued movement of the Lancaster and her tow out of the slip; that, despite the answer to the second one-whistle inquiry, the Lancaster continued to back out of the slip and to cross the Canal, where she brought her tow close to vessels lying on the opposite side, and then she went into head motion for the purpose of again entering the slip, and was unable to complete that maneuver at the time of the collision; that the stern of the Lancaster actually extended out into

the Canal at least twenty-five feet at the time of the impact; that the Lancaster and her tow were angling into the slip at the time, at about forty-five degrees.

The navigator of the McGuirl Bros. says that, when he realized that the Lancaster could not get back into the slip, and that a collision was imminent, he put his own tug into reverse and brought his fantail against the Montezuma.

The witness James P. McGuirl, who was an oiler on the claimant's tug, saw the collision, and was at the hawser bitts at the time. He says that his tug sheered off to starboard and her tow sheered to port, which caused her to come in contact as stated.

For the Lancaster, it is denied that there was any movement out of the slip after the one-blast signal had been blown agreeing to the McGuirl's passing, but that the McAllister was made fast to the Underwriter as heretofore stated, and that the Montezuma simply inclined to her own port hand as she made down from 19th Street and so came into collision with the Lancaster.

This version of the occurrence is the more likely of the two, for the following reasons:

The Lancaster's failure to answer the first one-whistle signal from the McGuirl was consistent with a realization that there was no reason why it should be blown. The Lancaster was in the slip and, if her story is true, she had no intention of leaving it until the mooring operation had been completed; evidently the McGuirl Bros. was unwilling to proceed without further assurance, but whether that misgiving was due to the ability of those in charge of her navigation to clearly see, when off 19th Street, what the Lancaster was doing in the slip above the 21st Street pier, or to an inability caused by the presence of pier sheds on that pier, it is not possible to conclude, because the present Sanborn map concededly reflects physical conditions which did not exist six years ago.

Whatever the reason, the fact is that the second inquiry was blown and answered, and there is agreement between the navigators as to the understanding thereby created, and, in order to accept the claimant's story, it is necessary to conclude that the navigator of the Lancaster, having agreed to keep out of the McGuirl's way, deliberately repudiated that undertaking, and so maneuvered as to defeat the agreement which he had given. Nothing in the latter's statement of his purpose, in making a disposition of the McAllister No. 74 when he was unsuccessful in finding the pile-driver, is consistent with the maneuver described by the claimant's witnesses, for no reasonable explanation is suggested for his simply backing out of the slip and then entering it again.

If there had been no exchange of signals, it might have been that each vessel navigated without reference to the other, and that both were careless; the evidence, however, excludes such an explanation. What probably happened is that the Lancaster was not entirely inside the pier end while mooring the lighter, and the navigator of the McGuirl Bros. mistakenly supposed that she was, and brought his tow down a little too close to the piers which were on his port hand; his course required him to incline somewhat to his starboard and, in so doing, he probably miscalculated the inevitable sheering to port of the Montezuma in passing off the end of the 21st Street pier.

Whether this is the correct explanation or not, the fact remains that the Lancaster agreed not to impede or interfere with the McGuirl, and it would require a more positive showing on the part of the claimant than has been offered, to induce the Court to conclude that this agreement was flagrantly departed from in the face of an oncoming tow which was distant only one city block at the time that the exchange of signals was had.

Decree for libelant, with costs, to be settled on notice.

If findings are desired, they may be settled at the same time, and are to embody appropriate recitals as to ownership and incorporation.